UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED
MAY 2 4 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-358-GWU

RONNIE RATLIFF, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

Ratliff

>
> Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.
>
> 4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).
>
> 5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).
>
> 6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).
>
> 7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

Ratliff

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

Ratliff

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d

279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Ronnie Ratliff, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of bilateral carpal tunnel syndrome by history (status post left carpal tunnel release), controlled hypertension, a history of sick sinus syndrome (status post pacemaker implantation with adequate function), mild chronic obstructive pulmonary disease, a history of asthma and bronchitis, recurrent major depression, alcohol dependence (in full sustained remission by history), and polysubstance dependence with ongoing marijuana use. (Tr. 18). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Ratliff retained the residual functional capacity to perform his past relevant work as a fast food worker, lumber stacker, cook, and freight loader and, therefore, was not entitled to benefits. (Tr. 29-32). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were capable of "medium" level exertion, could not have exposure to pulmonary irritants

such as dust, fumes, gases, chemicals, or noxious odors, and had no more than a "limited but satisfactory" ability to deal with the public, behave in an emotionally stable manner, and deal with the stress of routine work settings. (Tr. 568-9). The VE responded that a person with these restrictions could perform several of the plaintiff's past jobs and, in the alternative, also identified other work existing in the national economy which such a person could perform. (Tr. 569-70).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Although the ALJ did find that the plaintiff had bilateral carpal tunnel syndrome "by history," she found no functional restrictions relating to this condition. Evidence from the plaintiff's treating family physician, Dr. Mehdi Poorkay, indicates that he referred the plaintiff to a neurologist, Dr. Arden Acob, in August, 2003 for evaluation of carpal tunnel syndrome. (Tr. 492). Dr. Acob attempted to perform an EMG/NCV of Mr. Ratliff's upper extremities, but was only partially successful, apparently due to the plaintiff's inability to tolerate the testing. (Tr. 284-5).[1] Dr. Acob did not indicate any positive findings on physical examination other than paraspinal muscle tenderness, but did provide pain medications and a pain shot. (Tr. 287-90, 349-52). In June 2004, Dr. Poorkay referred Mr. Ratliff to Dr. Charles Catron, whose

---

[1]The partial results did not show any abnormality. (Tr. 284-5).

Ratliff

physical examination showed a positive Phalen's sign and a positive Tinel's sign over both pronators. (Tr. 521-2).[2] After a trial of wrist splints and an injection into the left carpal tunnel were ineffective (Tr. 520, 522), Dr. Catron performed left carpal tunnel release surgery on July 22, 2004 (Tr. 529-30).

Dr. Catron did not list any functional restrictions, but Dr. Poorkay indicated in May, 2004 that Mr. Ratliff was limited to occasional manipulations with his right hand. (Tr. 475).[3]

While the ALJ rejected Dr. Poorkay's restrictions on the ground that they were not supported by objective findings, there is objective evidence of bilateral carpal tunnel syndrome which would support restrictions on manipulations. Dr. Poorkay's notes are handwritten, difficult to read, and give little detail, but he saw the plaintiff on a frequent basis over at least two years (Tr. 477-518), and referred his patient to two specialists for evaluation of carpal tunnel symptoms. Therefore, he was well-placed to evaluate restrictions for this condition, which the ALJ, as previously noted, accepted was a "severe" impairment, albeit only "by history." As a treating source, his opinion is entitled to great weight when it is supported, as here, by objective

---

[2]Dr. Catron's notes show that he sent a copy of his findings to Dr. Poorkay. (Tr. 522).

[3]Dr. Poorkay also indicated that the plaintiff could not stand, sit, lift any weight, raise his arms over shoulder level, and would occasionally need to elevate his legs during an eight-hour workday. (Id.). Support in the record for these restrictions is questionable, although the plaintiff did have a variety of physical problems, including heart problems which required the implantation of a pacemaker.

9

Ratliff

signs, symptoms, and laboratory findings. While a consultative examination by Dr. Mark Burns in August, 2002 did not show any evidence of carpal tunnel symptoms (Tr. 224-7), the specific findings of the treating source, Dr. Catron, must be given greater weight in this regard.[4]

Although a remand will be necessary on this issue, the Court also notes that the ALJ's choice of mental restrictions is not supported by any specific evaluator. The ALJ rejected indications of greater impairment from Dr. Poorkay (Tr. 475) on the incorrect grounds that his ability to render an assessment of the plaintiff's psychological limitations was "questionable" since he was not a mental health professional. (Tr. 29). As additional grounds, the ALJ stated that the restrictions were not supported by other medical evidence, including a consultative examination report by Dr. Pamela Starkey, the conclusions of state agency reviewing psychologists Laura Cutler and Ilza Sillers, and a Global Assessment of Functioning (GAF) score assigned after the most recent of Mr. Ratliff's numerous psychiatric hospitalizations, which was in the "moderate" range of functioning. (Id.). While the plaintiff's psychological problems, which apparently include frequent suicidal ideation, are clearly intertwined with substance abuse (e.g., Tr. 156, 294A, 313, 429), none of the sources clearly gave an opinion regarding functional restrictions without consideration of substance abuse. In particular, it appears that the state

---

[4]It should also be noted that the plaintiff did not begin complaining of the problem until approximately one year after Dr. Burns' examination. (Tr. 287).

10

Ratliff

agency sources, Dr. Cutler and Dr. Sillers, indicated much greater impairment than found by the ALJ. (Tr. 206-8, 252-4). Dr. Cutler specifically indicated that her opinion was primarily based on the opinion of a treating source, Dr. Geete (Tr. 156, 168-9) rather than that of the one-time evaluator Dr. Starkey, and stated that although the claimant had both depression and polysubstance abuse, "discrete mental limitations are somewhat credible" (Tr. 208). Since the evidence so strongly suggests that the plaintiff does have discrete mental problems, it would be useful to obtain an opinion from a medical expert with access to the entire record regarding the plaintiff's capabilities without consideration of substance abuse, which is no longer a basis for benefits under Public Law 104-121.

The decision will be remanded for further consideration.

This the __24__ day of May, 2006.

G. WIX UNTHANK
SENIOR JUDGE

11